Case 1:20-cv-04046-VEC   Document 26   Filed 06/10/20   Page 1 of 5

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/10/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
JUAN EDGAR BERNAL GUTIERREZ,              :
                                          :
                          Petitioner,     :      20-CV-4046 (VEC)
                                          :
           -against-                      :      ORDER
                                          :
THOMAS DECKER, Director, New York Field Office of :
U.S. Immigrations and Customs Enforcement; CHAD :
WOLF, Acting Secretary, U.S. Department of Homeland :
Security; WILLIAM BARR, U.S. Attorney General; and :
CARL E. DU BOIS, Sheriff of Orange County, :
                                          :
                          Respondents.    :
-------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On May 26, 2020, Mr. Juan Bernal Gutierrez ("Petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Pet. (Dkt. 1). Petitioner faces immigration removal proceedings and is detained by U.S. Immigration and Customs Enforcement ("ICE") at Orange County Correctional Facility ("OCCF") in Goshen, New York. *Id.* ¶ 1. He claims that his detention violates his substantive and procedural due process rights under the Fifth Amendment. *Id.* ¶¶ 75–78. With regret, the Court must deny his Petition.

Petitioner, a citizen of Mexico, came to the United States 28 years ago when he was approximately 3-years old. *Id.* ¶ 2; King Decl. (Dkt. 11) ¶ 5. His parents are U.S. lawful permanent residents, and his brothers are U.S. citizens. Pet. ¶ 2. He also has three children and a common-law partner—all U.S. citizens. *Id.* At some point in his teenage years, Petitioner's parents applied for lawful permanent residency for him, but he "aged out" of that application process when he turned 18. *Id.*

On January 9, 2020, ICE arrested Petitioner and instituted removal proceedings pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). King Decl. ¶ 8. His detention is not mandatory; it is governed by

8 U.S.C. § 1226(a).  Return (Dkt. 10) Ex. I; King Decl. ¶¶ 3–4.  ICE granted him a bond hearing, which was held via video teleconference with counsel on May 14, 2020; the immigration judge denied bond after finding that Petitioner was a danger to the community.  King Decl. ¶ 17.  Petitioner has two traffic violations for Driving While Ability Impaired by the Consumption of Alcohol ("DWAI"), N.Y. Vehicle and Traffic Law § 1192(1), in 2009 and 2019.  *Id.* ¶ 7(vi), (xiii).  Each resulted in an approximate $500 fine and 90-day suspension of his license, but no jail time.  *Id.*  Petitioner was also arrested several times between 2006 and 2010 for driving without a license.  *Id.* ¶ 7.  As far as the Court is aware, an appeal of the bond decision remains pending before the Board of Immigration Appeals ("BIA").  Tr. (Dkt. 24) at 25:22–26:11.

Before his bond hearing, on April 8, 2020, Petitioner also applied to ICE for discretionary release pursuant to a preliminary injunction order in *Velesaca v. Wolf* (20-CV-1803, Dkt. 67) requiring ICE to re-determine detainees' detention based on individualized assessments of flight risk or danger.  King Decl. ¶ 20.  On May 12, 2020, ICE declined to release Petitioner, finding "that there is no compelling reason to warrant a favorable exercise of discretion," citing Petitioner's two DWAI convictions.  June 3, 2020, Gov't Letter (Dkt. 21) Ex. 1.

Because Petitioner suffers from Type 2 diabetes, he is at heightened risk of severe illness or death if he contracts COVID-19.  Pet. ¶¶ 3, 44.  He argues that he is being subject to unconstitutional conditions of confinement because ICE has not implemented sufficient precautionary measures to protect him against those risks.  To prevail on his substantive due process claim, Petitioner must show that: (1) he has a serious medical need, and (2) Respondents

2

have acted with deliberate indifference to such need.[1]  *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citations omitted).

Why ICE did not exercise its discretion to release Petitioner is beyond puzzling.  ICE concluded that Petitioner was a danger to the community on the basis of two DWAI violations ten years apart.  Neither generated any jail time—it is unlikely local authorities found that Petitioner was a danger to the community then, and ICE articulates no reason why he would be now other than a BIA decision holding that *any* drunk-driving conviction is a presumptive basis for a finding that the immigrant poses a danger to the community.  June 3, 2020, Gov't Letter at 2; *see also* Pet. ¶ 28.  While drunk driving unquestionably poses a danger to society, two violations in over ten years when no one was hurt and when his degree of impairment was sufficiently limited that the charge was disposed of as a violation is simply not compelling evidence that this person poses a risk to the community that cannot be mitigated short of detention.  The Court cannot imagine that a criminal defendant (who was not charged with a crime of violence or a serious narcotics offense, *see* 18 U.S.C § 3142(e)(2)) would ever be held without bail on a record identical to this one.  The thought process behind holding a man during a pandemic who is the father of three American-citizen children who has a heightened risk of an adverse outcome if he contracts COVID-19 is baffling.

ICE does not appear to appreciate the risks that individuals like Petitioner with underlying conditions face during a deadly pandemic simply by virtue of being detained.  There is no dispute that Petitioner would be safer on bond (and ICE would save significant resources)

---

[1] Petitioner appears to separate his claim into a "punitive conditions" theory and a "deliberate indifference to medical needs" theory, *see* Mem. of Law (Dkt. 2) at 8–12; those two theories merge in this case because each is based on ICE's purported failure either to protect Petitioner from the risks of COVID-19 or to release him.

than in detention.  And the Court has no doubt that reasonable bail conditions exist to ensure that he neither flees nor poses a danger to the community.  Since ICE directed its field offices on April 4, 2020, to reconsider the detentions of high-risk individuals, *see* Return Ex. B, the New York Field Office has released a paltry 146 individuals, *see* June 3, 2020, Gov't Letter at 3.  ICE reports that it does not accessibly maintain the total number of detainees who requested but were denied discretionary release.  *Id.*  Without such a number, it is difficult to draw inferences from the 146-individuals figure.  But given ICE's decision regarding Petitioner's detention, and that there were 2,477 ICE arrests and 2,752 removals in 2019 in the NYC area, the Court has to believe that Petitioner is not the only detainee who could be released with minimal risk to the public and substantial benefit to the detainee.  *See Fact Sheet: ICE Enforcement in New York City*, New York City Mayor's Office of Immigrant Affairs (January 2020), https://www1.nyc.gov/assets/immigrants/downloads/pdf/enforcement-factsheet-2020-01-22.pdf.

Although this Court would almost certainly release Petitioner on bond if it were my decision, the mere fact that ICE decided differently does not mean that his due process rights have been violated.  OCCF has taken constitutionally adequate precautions to address the risks Petitioner faces from COVID-19.  In other words, it has not been "deliberately indifferent" to his medical needs.  *Charles*, 925 F.3d at 86.

To date, OCCF has had no inmates who have tested positive for COVID-19, and none is showing symptoms.  Flynn Decl. (Dkt. 13) ¶ 15; Mele Decl. (Dkt. 21-2) ¶ 9(n).  Petitioner and other detainees have their own cells, and OCCF has negative-pressure rooms for holding any detainees who do get sick.  Mele Decl. ¶¶ 9(g), (i).  There is room at OCCF, which is currently within capacity, for detainees to socially distance, and all detainees and staff are issued masks which they are required to wear.  *Id.* ¶¶ 4, 9(e)–(g).  OCCF also regularly cleans and sanitizes the

facility and provides sanitation and protective supplies to detainees and staff. *Id.* ¶ 9(i). Staff are screened when they enter the facility, and outside access has been suspended. *Id.* ¶¶ 9(c)–(d). Although eight corrections officers have had COVID-19, they had no contact with inmates and were quarantined for at least 14 days after recovering. *Id.* ¶¶ 9(k), (n).

New detainee intake was suspended on March 23, 2020, but began again on May 27, 2020. *Id.* ¶ 9(a). All new detainees are tested at intake for COVID-19, medically screened for underlying conditions, and quarantined for 14 days. Dixon Decl. (Dkt. 22-1) ¶¶ 8–11. High-risk detainees, including Petitioner, are tracked and monitored. Mele Decl. ¶ 9(h). During quarantine, new detainees are screened daily for COVID-19 symptoms and undergo a physical examination to obtain additional details about their medical history so that they can be provided necessary care at OCCF. Dixon Decl. ¶¶ 10, 13. As of June 4, 2020, OCCF has had five new inmates, each of whom was tested, screened, and quarantined. *Id.* ¶ 14.

The Court has also considered Petitioner's procedural due process claim and finds it without merit. To the extent this claim is based on conditions at OCCF, it tracks his substantive due process claim. Petitioner otherwise does not identify any constitutionally-deficient review of his detention or process that he was due but did not receive.

For the foregoing reasons, the Petition is DENIED.

**SO ORDERED.**

Date:  June 10, 2020
       New York, New York

**VALERIE CAPRONI**
**United States District Judge**